WM. SHALAND v. UNITED STATES

No. 4448.—Invoices dated Yokohama, Japan, September 10, 1937, etc.
Certified September 11, 1937, etc.
Entered at New York October 8, 1937, etc.
Entry Nos. 751741, 744467, 729589, 736044.

(Decided November 14, 1938)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

SULLIVAN, Judge: These reappraisements relate to certain glass salt and pepper shakers imported from Japan in July, August, and September 1937. In reappraisements 123299–A and 123411–A they were invoiced at 5 yen per gross, entered to meet advances at 6.26 yen per gross, and appraised as entered. In reappraisement 124465–A they were invoiced at 5.50 yen per gross and entered at 5.50 yen per gross with an addition to meet advances of 0.76 yen per gross; and in reappraisement 124466–A they were invoiced at 5.50 yen per gross and entered to meet advances at 6.26 yen per gross. In each case they were appraised as entered.

The plaintiff, William Shaland, testified he purchased these salt and pepper shakers, being No. 4286 on the invoices, from Hokuto-Seisakujo of Tokio, Japan, who offered these goods to him at five yen per gross, packed. Samples of this item were received in evidence as Exhibit 1; that he made purchases from this manufacturer of this item in September and October 1937, at 5 yen per gross packed, and the entry was made under duress; that he also placed orders and made purchases from this same manufacturer of this same item 4286 in August 1937, at 5.50 yen; that he has not any interest in the business of the manufacturer, nor has the manufacturer any interest in the business of his firm; that there is not any agreement, express or implied, as to American agency; that the prices appearing on the invoices were the prices at which the merchandise was freely offered to him; that he obtained knowledge respecting the foreign market value of item 4286 "by getting prices from various manufacturers" on salt and pepper shakers like those before the Court in the same district in Japan; that the prices so received were "in the range of five yen a gross"; that the prices he received for the same without cases and packing were "4.20 a gross."

On cross-examination he testified he enquired of "possibly two, possibly three" other manufacturers as to the price of this article; that they did not quote a higher price for this merchandise, but in some instances it was a lower price. He was asked if the merchandise was similar merchandise to that in question, and he replied "Possibly the quality wasn't as good"; that he "couldn't recall" whether other manufacturers offered him the same quality at higher prices. He then testified as follows on cross-examination:

X Q. What made you buy from this particular manufacturer?—A. Well, you are in Japan and you are buying here and there. The prices usually range about the same and you favor one and put in the order here, and sometimes you place the order in another place.

X Q. Isn't price an inducement, a prime factor?—A. The prices are usually the same. It is a preference as to whom you want to give the order to.

\* \* \* \* \* \* \*

X Q. You are positive that other manufacturers did not ask more money for the same item?—A. Yes.

Plaintiff introduced in evidence as Exhibit 2 the affidavit of Z. Yamasaki of Hokyo, Japan, verified May 11, 1938. He is the manager of Hokuto Seisakujo of Tokyo, Japan, the manufacturer of the salt and pepper shakers in question, item 4286. He then deposes and says as follows:

I further swear under oath that the price appearing on our invoice to William Shaland of New York City, certified by the American Consul at Yokohama, on July 31, 1937, and which invoice covers certain salt and pepper shakers, item No. 4286, represents the true market value of these particular numbered salt and pepper shakers in Japan at the time of exportation and that we were and are prepared and willing to sell in the usual wholesale quantities and in the ordinary course of trade the identical salt and pepper shakers by number, at the price at which they were sold and invoiced to William Shaland of New York City.

I further swear under oath that whenever the salt and pepper shakers are described as item No. 4286 that this number represents a certain type of salt and pepper shaker which never varies.

The invoice referred to by deponent as being certified on July 31, 1937, is probably the invoice of that date with reappraisement 124465–A, the invoiced value of which is 5.50 yen per gross.

The Government did not introduce any evidence in rebuttal.

At the close of the trial the Government made the following motion:

The Government moves to dismiss the appeal to reappraisement on the ground that the evidence adduced by the plaintiff was insufficient in law to overcome the presumptions of the Appraiser's report. There is no proper evidence of foreign value.

The court ruled that the motion would be passed on when the merits are taken up.

Section 501 of the Tariff Act of 1930 provides, among other things:

The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The appellate court has held in *Marshall Field & Co.* v. *United States*, 20 C. C. P. A. 225, T. D. 46037:

It has been announced as the rule of law by this court that the presumption of correctness attaching to the classification of the collector can not be regarded as having evidentiary value and can not be weighed against the evidence produced on the trial.

And in *United States* v. *Marshall Field & Co.* 18 id. 469, T. D. 44761, the court said:

Here we think the evidence contained in the examiner's statement plus the evidence of the sample itself, justified in the absence of anything further, the Customs Court's finding. We at least are unable to find in the record anything from which to deduce a conclusion that said finding was erroneous. A *prima facie* showing was made by protestant sufficient to require rebuttal by the Government.

So in the case at bar, the presumption of correctness attaching to the action of the appraiser "can not be regarded as having evidentiary

value and can not be weighed against the evidence produced at the trial"; and, in the case at bar, as in the latter authority, "a *prima facie* showing" has been made by the plaintiff "sufficient to require rebuttal by the Government." The Government has not rebutted plaintiff's evidence in this case, and such evidence is entitled to receive greater weight than the mere unsupported presumption attaching to the action of the appraiser. The Government's motion to dismiss is denied.

In view of the testimony of Mr. Shaland that he placed orders and made purchases from the manufacturer of this merchandise, item 4286, in August, 1937, at 5.50 yen, and the affidavit of Mr. Yamasaki that the price (5.50 yen) of item 4286 on the invoice certified July 31, 1937, (reappraisement 124465–A) represents the true market value of this item in Japan at the time of exportation, I hold:

(1) That there was a foreign market value for this merchandise in Japan at the times of exportation thereof, and that the export value thereof is not higher.

(2) That the foreign-market value of this merchandise in Japan, item 4286, at the times of exportation thereof, was 5.50 yen per gross.

(3) That the invoiced value is sustained in reappraisements 124465–A and 124466–A.

(4) That in reappraisements 123299–A and 123411–A the invoiced value plus 0.50 yen, or a total of 5.50 yen, will be the reappraised value, local freight, cases and packing as invoiced.

Judgment accordingly.